# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TMANDO ALLEN DENSON,

        Defendant-Appellant.

UNPUBLISHED
October 1, 2015

No. 321200
Genesee Circuit Court
LC No. 13-032919-FH

Before: MURRAY, P.J., and METER and OWENS, JJ.

PER CURIAM.

A jury convicted defendant of assault with the intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 60 to 240 months' imprisonment. Defendant appeals as of right, and we affirm.

## I. SELF-DEFENSE

Defendant first argues that the prosecution failed to satisfy its burden of presenting sufficient evidence to prove that defendant did not assault the victim, Shamark Woodward II, who defendant maintains was an intruder in his house, in objectively reasonable defense of himself and his children. We review de novo a defendant's contention that the prosecutor introduced insufficient evidence to rebut a self-defense claim. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). In determining whether sufficient evidence supported a conviction, a court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt or, in the context of this case, that the prosecution disproved defendant's claim of self-defense beyond a reasonable doubt. See, generally, *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial." *Id*. at 400. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The record discloses that the prosecutor introduced ample evidence from which the jury could reasonably conclude beyond a reasonable doubt that defendant had no reasonable basis for his theory. Defendant does not challenge the prosecutor's introduction of evidence sufficient to

prove his guilt of assaulting Woodward while intending to inflict great bodily harm less than murder. He argues only that the prosecutor

> failed to rebut his assertion that he used force other than deadly force against another individual in a place he had the legal right to be with no duty to retreat while he honestly and reasonably believe[d] that the use of that force was necessary to defend himself and/or his children from the imminent unlawful use of force by [Woodward].

The Michigan common law affords a person the right to employ force against another person if the first person possesses an honest and reasonable belief that he or another person faces an imminent risk of death or serious bodily harm, and the first person honestly and reasonably believes that he must employ "force to prevent such harm to himself" or another person. *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (internal quotation marks and citations omitted); *People v Kurr*, 253 Mich App 317, 320-321; 654 NW2d 651 (2002). A person can use even deadly force "to repel an imminent forcible sexual penetration." *Id.* at 321 (internal quotation marks and citation omitted). However, a person generally "does not act in justifiable self-defense when he . . . uses excessive force or when [he] is the initial aggressor." *Guajardo*, 300 Mich App at 35. "[O]nce the defendant injects the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," the prosecutor "bears the burden of disproving . . . self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010).

In the Self-Defense Act (SDA), MCL 780.971 *et seq.*, the Michigan Legislature

> codified certain circumstances in which a person may use . . . force in self-defense of another person without having the duty to retreat. Specifically, the SDA modified the common law's duty to retreat that was imposed on individuals who were attacked outside their own home or were not subjected to a sudden, fierce, and violent attack. [*Guajardo*, 300 Mich App at 35 (internal quotation marks and citations omitted).]

In this case, the parties do not dispute that defendant used nondeadly force against Woodward. MCL 780.972(2) provides:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

Defendant claims that MCL 780.951(1) applies in the present case; this statute states, in pertinent part:

> Except as provided in subsection (2) [not applicable here], it is a rebuttable presumption in a civil or criminal case that an individual who uses

deadly force or force other than deadly force under section 2 of the self-defense act has an honest and reasonable belief that imminent death of, sexual assault of, or great bodily harm to himself or herself or another individual will occur if both of the following apply:

(a) The individual against whom deadly force or force other than deadly force is used is in the process of breaking and entering a dwelling or business premises or committing home invasion or has broken and entered a dwelling or business premises or committed home invasion and is still present in the dwelling or business premises, or is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will.

(b) The individual using deadly force or force other than deadly force honestly and reasonably believes that the individual is engaging in conduct described in subdivision (a).

Woodward testified that on October 22, 2012, he was 17 years old. Woodward and DD, defendant's 15-year-old daughter, agreed that they had met at school, had been dating, and that DD had invited Woodward to her Flint home the evening of October 22, 2012. Woodward and DD further agreed that they talked in the living room, heard a car outside, and subsequently went upstairs to DD's bedroom.

Woodward testified that while he and DD were in the living room, they talked, kissed, and hugged, and after he heard a car outside, DD suggested that they "go upstairs and . . . do it." Woodward recalled that after he and DD went upstairs, they talked again, hugged and kissed again, and then removed their pants and underwear. Woodward testified that he heard footsteps on the stairs, DD got up and replaced her "bottoms," and he was in shock in the middle of DD's bedroom with his "bottoms" off. Woodward testified that he did nothing to fight back against defendant when defendant assaulted him. Woodward further testified that defendant "bash[ed]" him with a lamp, forced both him and DD to get naked, and then took photographs of them, after which defendant told him that Woodward had to deal with "[defendant's] homeboys" or with defendant. According to Woodward, defendant then began slashing him with a knife.

Woodward testified that when defendant first observed him upstairs in DD's bedroom, he was sitting on the floor several feet away from DD. Woodward denied that he ever moved toward DD after defendant came upstairs and denied that he tried to force DD into having sex. Woodward also denied possessing a weapon during the incident.

Defendant testified that when he arrived upstairs on the night of October 22, 2012, Woodward was on top of DD, who was calling for assistance and looked scared. DD corroborated defendant's testimony.

The jury apparently credited Woodward's account of events, which was buttressed by evidence of Woodward's injuries. We will not revisit the jury's credibility determination. *Hardiman*, 466 Mich at 428; *Nowack*, 462 Mich at 400. The jury could have reasonably

concluded beyond a reasonable doubt that defendant had no reasonable ground for his theory that, in assaulting Woodward, he acted to protect himself or his children.

## II. OTHER-ACTS EVIDENCE

Defendant next argues that the trial court erred in admitting evidence of the circumstances underlying a 2002 conviction of assault with intent to do great bodily harm. Defendant asserts that the evidence lacked relevance toward a material issue in dispute and unfairly prejudiced him. An appellate court considers de novo "[p]reliminary questions of law, including whether a rule of evidence precludes the admission of evidence . . . ." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). We review for a clear abuse of discretion a trial court's ultimate decision whether to admit evidence. *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009). An abuse of discretion exists when the court selects an outcome that falls outside the range of principled and reasonable outcomes. *Id*.

The trial court acted within its discretion in admitting under MRE 404(b) the other-acts evidence regarding defendant's 2002 assault of Tyrone Bush, which the prosecutor offered to rebut defendant's self-defense theory. "MRE 404(b) permits the admission of [other-acts] evidence on any ground that does not risk impermissible inferences of character to conduct." *Waclawski*, 286 Mich App at 671 (internal quotation marks and citations omitted). MRE 404(b)(1) prohibits the admission of evidence of a defendant's other acts or crimes when introduced solely for the purpose of showing the defendant's action in conformity with his criminal character. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). However, evidence of a defendant's other acts or crimes qualifies as admissible under the following circumstances: (1) the prosecutor offers the evidence for a proper purpose under MRE 404(b)(1);[1] (2) the evidence is relevant; and (3) any unfair prejudice arising from the admission of the other-acts evidence does not substantially outweigh its probative value, in accordance with MRE 403; in addition, when requested by a litigant, the court can give the jury a limiting instruction. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998); *Waclawski*, 286 Mich App at 671. "The determination whether the probative value of evidence is substantially outweighed by its prejudicial effect is best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony." *Waclawski*, 286 Mich App at 670.

---

[1] According to MRE 404(b)(1):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The prosecutor offered the other-acts evidence to disprove defendant's proffered defense that he assaulted Woodward in defending himself or his children. The prosecutor explained that in 2002 defendant had become "upset with . . . Tyrone Bush," defendant drove to Bush's Whitney Street home in Detroit and "bashed out . . . Bush's . . . car window," "Bush came out on his porch," Bush attempted to go back inside the house, and defendant "pulled out a gun and shot [Bush] in the stomach." Defendant characterized the 2002 assault as solely evidence of his violent propensity and urged the trial court to deem the 2002 assault irrelevant and inadmissible under MRE 403. The trial court ruled that "[t]he Prosecutor can show facts of the previous assault if he wishes to show that [defendant] has some kind of temper [or bad judgment]," and ordered that the prosecutor could only ask defendant about the 2002 conviction if defendant denied the occurrence of the facts underlying the assault.

The prosecutor offered the facts surrounding defendant's 2002 assault of Bush to rebut defendant's primary defense theory at trial, that defendant assaulted Woodward only after discovering him in DD's bedroom about to sexually assault her. The contradiction of the self-defense theory constituted a proper, noncharacter purpose for admission under MRE 404(b). The facts surrounding defendant's 2002 assault of Bush had significant probative value toward contradicting the significant testimony that defendant introduced in support of the primary defense theory. *People v Knox*, 469 Mich 502, 511; 674 NW2d 366 (2004) (explaining that other-acts evidence must qualify as "probative of something other than the defendant's character or propensity to commit the charged crime"). The circumstances surrounding defendant's 2002 altercation with Bush necessarily produced a level of prejudice to the defense. However, considering the substantial probative force toward disproving defendant's self-defense theory, we detect no "unfair prejudice, confusion of the issues, or misleading the jury." MRE 403. To the extent that defendant complains about the injection of references to a purported bribery of Bush, we conclude that the trial court's instructions that the jury not consider a bribery cured any potential unfair prejudice. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defendant mistakenly characterizes this case as analogous to *Knox*, in which a jury convicted the defendant "of first-degree felony murder . . . with first-degree child abuse . . . as the predicate." *Id*. at 504. The trial court admitted other-acts evidence consisting of "[the] defendant's past anger . . . ." *Id*. The Supreme Court concluded that "[t]he evidence of [the] defendant's past demonstrations of anger were not relevant to any material fact at issue and did not meet the requirements" to establish a plan, scheme, or system. *Id*. at 512. The Supreme Court held that "[u]nder these circumstances, the evidence of defendant's past anger could only serve the improper purpose of demonstrating that he had the bad character or propensity to harm his son." *Id*. at 512-513. Unlike in *Knox*, the acts underlying defendant's 2002 assault of Bush had significant probative value concerning a specialized matter in dispute: defendant's self-defense claim. Despite the trial court's rather inartful wording in its ruling admitting the evidence, we nonetheless find that the evidence was admissible under the unique circumstances of this case.

## III. RIGHT OF CONFRONTATION

Defendant additionally argues that the trial court's admission of testimony by an emergency room doctor, Dr. Faisal Mawri, about treatment rendered by another physician, Dr. Tammy Chen, violated defendant's right of confrontation. Defendant theorizes that the violation

prejudiced him in light of the prosecutor's significant reliance on the nontreating doctor's testimony regarding the seriousness of Woodward's injuries. We review de novo "[a] preliminary issue of law regarding admissibility based on construction of a constitutional provision . . . ." *People v Jambor (On Remand)*, 273 Mich App 477, 481; 729 NW2d 569 (2007). We review for a clear abuse of discretion a trial court's ultimate decision whether to admit evidence. *Waclawski*, 286 Mich App at 670.

We conclude that the trial court acted within its discretion in admitting the evidence in question.

> Both the United States and Michigan constitutions guarantee a criminal defendant the right to confront the witnesses against him or her. US Const, Am VI; Const 1963, art 1, § 20. To preserve this right, testimonial hearsay is inadmissible against a criminal defendant unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. However, if the hearsay is nontestimonial, the Confrontation Clause does not restrict state law from determining admissibility.

> Statements are testimonial if the "primary purpose" of the statements or the questioning that elicits them is to establish or prove past events potentially relevant to later criminal prosecution. [*People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009) (internal quotation marks and citations omitted).]

Statements also qualify as "testimonial" if the circumstances surrounding their making "objectively indicated that the statement[] would be available for use in a later prosecution . . . ." *Id.* (internal quotation marks and citation omitted).

On September 3, 2013, the prosecutor filed a motion to remove from his witness list Dr. Tammy Chen. The prosecutor stated that he had intended to call at trial two doctors "involved in [Woodward's] treatment: Dr. Tammy Chen, a resident, who did the actual stitching and stapling; and Dr. Faisal Mawri, the attending physician who observed the victim's injuries and supervised Dr. Chen." The prosecutor averred that Dr. Chen lived in California, her testimony concerning Woodward's injures and treatment was cumulative of Dr. Mawri's testimony, and the requirement that the prosecutor produce Dr. Chen would involve "an expensive and time-consuming waste of resources." Defendant objected that his right of confrontation gave him the right to question Dr. Chen, who "personally interacted with [Woodward], even at times when . . . Dr. Mawri was not present." The trial court ruled from the bench that the prosecutor "can use the medical reports . . . and . . . can delete [Dr. Chen] as a witness." The court did not specifically address defendant's right of confrontation.

Dr. Mawri testified at trial regarding a medical examination of Woodward at the Flint Hurley Hospital's emergency department. Dr. Mawri clarified that he personally observed Woodward's lacerations and watched Dr. Chen staple and suture the lacerations. Both counsel elicited from Dr. Mawri that when Woodward arrived at the hospital, he seemed disoriented, and Dr. Mawri opined that, without treatment, Woodward's injuries would endanger his health. Significantly, Dr. Mawri testified that he helped Dr. Chen prepare Woodward's medical records.

Because Dr. Mawri's testimony concerned his personal observations, defendant has not established any violation of the right of confrontation.

## IV. SCOPE OF CROSS-EXAMINATION

Defendant further challenges the trial court's refusal to permit questioning of Woodward about a prosecutorial grant of immunity or other promise not to charge him for assaulting DD.

The trial court acted within its discretion in refusing defendant's request to question Woodward about a potential deal with the prosecutor. The prosecutor posited as irrelevant to any issue in the case "the fact that the Genesee County Prosecutor's Office made a decision not to charge" Woodward or offer him immunity or a plea deal. Defendant responded that the promise not to charge Woodward constituted an incentive "to not tell the truth" and was relevant to Woodward's credibility. Defendant elaborated as follows:

> [W]hen a person consents to sex and then subsequently changes their mind and say [sic] "no" and you continue, then that is clearly a crime . . . .
>
> And if that's the case, . . . and if . . . [DD] then files a complaint with the police and if the Prosecutor decides not to charge, . . . and advises the alleged . . . witness [Woodward] that . . . they're not going to charge, . . . that's an incentive not to tell the truth. And so I think that it is important and . . . probative especially . . . when it comes to me having to cross-examine [Woodward] in this case as to the fact that he's not being charged in this matter.

The prosecutor replied:

> [I]f the witness is told that you give . . . truthful testimony and you're not going to be charged, a hundred percent the jury should know that. But when the witness is told, "Hey, our office isn't charging you, we could change our minds. But I'm not aware of any plan to charge you and there's no immunity here . . . there's no connection." I don't think that you can make a reasonable argument that somehow that affects the witness's credibility.

Outside the jury's presence, Woodward denied that anyone had told him he would face prosecution. Woodward also denied that anyone had told him he would receive immunity in exchange for testifying against defendant. Woodward confirmed that the prosecutor had advised him that "[the prosecutor] did not expect you to be prosecuted," but "someone could change their mind later and decide to prosecute you." The trial court ruled, "I don't see where it's relevant. We're not going to use it."

Because no evidence substantiated that Woodward received any specific plea deal or promise not to charge him for his sexual contact with DD, the trial court did not abuse its discretion in characterizing the proposed inquiries as irrelevant to Woodward's credibility. MRE 401 & 402; *Waclawski*, 286 Mich App at 670. Given the absence of evidence regarding a plea deal or promise made to Woodward, the trial court's ruling did not violate defendant's right to present a defense or to cross-examine Woodward.

-7-

## V. EXCLUSION OF EXPERT TESTIMONY

Defendant next maintains that he established a sufficient basis for Christina Delikta's expertise in the area of sexual assault, and the trial court therefore erred by not allowing Delikta to testify about DD's feelings of guilt after an assault. We review for an abuse of discretion a trial court's ultimate ruling to admit or exclude expert testimony. *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007).

The trial court did not abuse its discretion in excluding the proposed expert testimony from Delikta, which did not qualify for admissibility under MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Delikta testified that she worked for two years as "the sexual assault crisis counselor" at the Flint YWCA. Before starting work at the YWCA, she worked for three years at the Judson Center providing "in-home services for families," which she described as services designed to help families "make the proper adjustments for [their homes] to be a safe and healthy environment" for children. Delikta added that she had also worked as a counselor in a residential facility for children between 8 and 14 years of age, providing therapy for behavioral and emotional issues. With respect to her educational background, Delikta testified that she had obtained a bachelor's degree in family life education from Spring Arbor University, which focused on "how the family unit works together" and was "similar to a social work bachelor's level or . . . psychology."

The trial court would not certify Delikta as an expert witness in the area of sexual assault, stating, "I don't have a foundation for that," "she has no specialized degree, she has no specialized training," and she "only . . . has . . . about two years of experience in a field that's quite new to her." Although Delikta possessed some experience as a sexual assault counselor, the parties simply did not elaborate concerning the scope of this experience or her qualifications for the position. In light of the dearth of evidence in the record of Delikta's qualification as an expert in sexual abuse, the trial court acted within its discretion in refusing to admit her testimony.

## VI. FLIGHT INSTRUCTION

Defendant next argues that no evidence supported the flight instruction that the trial court read to the jury. Defendant argues that he left the assault scene only to report to the police the sexual assault of DD and get medical attention and that he voluntarily surrendered to the police. The determination whether a jury instruction applies to the facts of a particular case lies within the sound discretion of the trial court. *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998).

The trial court did not abuse its discretion in finding that the record supported a jury instruction regarding flight. Defendant testified that immediately after the assault, he called his sister, called the police, and went to the police station, but found it closed. The prosecutor called as a rebuttal witness a police officer who testified that defendant gave a statement in which he admitted to going to a different home and trying to avoid the police after the assault. In light of the police officer's rebuttal testimony that defendant avoided the police after the assault, the trial court acted within its discretion in finding that the record supported the standard jury instruction regarding flight. See, generally, *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003) (explaining that the term "flight" includes such actions as fleeing the scene of the crime). "The instruction also fairly encompassed a theory of the case," specifically "the prosecutor's theor[y] . . . that [defendant's] decision to [avoid the police] showed his consciousness of guilt." *Armstrong*, 305 Mich App at 240.

## VII. CUMULATIVE ERROR

Defendant lastly argues that the existence of the many trial court errors combined to deprive him of a fair trial. When a defendant sets forth a claim that cumulative errors deprived him of a fair trial, "[r]eversal is warranted only if the effect of the errors was so seriously prejudicial that the defendant was denied a fair trial." *People v Werner*, 254 Mich App 528, 544; 659 NW2d 688 (2002). The "cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). In attempting to ascertain the impact of "cumulative error," an appellate court may consider only actual errors. *Id.* at 591 n 12. We conclude that because no actual errors marred defendant's trial, no cumulative prejudicial effect exists that deprived him of a fair trial.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Donald S. Owens