PEOPLE v KURR

Docket No. 228016. Submitted March 6, 2002, at Grand Rapids. Decided
    October 4, 2002, at 9:05 A.M. Leave to appeal denied, 467 Mich 942.

Jaclyn L. Kurr was convicted by a jury in the Kalamazoo Circuit
    Court, Richard Ryan Lamb, J., of voluntary manslaughter. The
    defendant appealed, alleging that the court erred in denying her
    request for a jury instruction regarding the defense of others. The
    request was based on evidence presented during the trial that the
    defendant and her boyfriend had argued, the boyfriend had
    punched her twice in the stomach, she had warned him that he
    should not hit her because she was pregnant, and when the boy-
    friend came toward her again, she had stabbed him. The court
    denied the request for the instruction on the basis that, if the
    defendant was pregnant at the time of the offense, the fetus or
    fetuses were less than twenty-two weeks old and therefore not
    capable of surviving outside the defendant's womb. The court rea-
    soned that because the alleged fetus or fetuses were nonviable,
    they did not constitute an "other" or "others" for purposes of the
    defense of others theory of defense.

The Court of Appeals held:

1. The theory regarding the defense of others extends to the pro-
tection of a fetus, viable or nonviable, from an assault against the
mother. The provisions of the fetal protection act, MCL 750.90a
et seq., show the Legislature's conclusion that embryos and fetuses,
viable or nonviable, are worthy of protection as living entities as a
matter of public policy. The defense, with regard to embryos and
fetuses, is available solely in the context of an assault against the
mother.

2. The mother is not limited to the use of deadly force against an
attacker only if her own life is in danger. She may, under appropri-
ate circumstances, use deadly force to protect her fetus even if she
does not fear for her own life.

3. The defense of others theory is available only if a person acts
to prevent unlawful bodily harm against another.

4. The failure to give the requested instruction deprived the
defendant of her due process right to present a defense.

Reversed and remanded.

1. CRIMINAL LAW — DEFENSE OF OTHERS.

   The defense of others theory is applicable as a defense only where a person acts to prevent unlawful bodily harm against another (CJI2d 7.21).

2. CRIMINAL LAW — DEFENSE OF OTHERS — ASSAULTS AGAINST PREGNANT WOMEN.

   The defense of others theory extends to the protection of embryos and fetuses, viable or nonviable, with regard to an assault against the mother; the mother is not limited to using appropriate deadly force against her attacker only if her own life is in danger and, even if she does not fear for her own life, may use appropriate deadly force to protect her embryos and fetuses from an assault against her (CJI2d 7.21; MCL 750.90a *et seq.*).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Heather S. Draves*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*) for the defendant on appeal.

Before: METER, P.J., and MARKEY and OWENS, JJ.

METER, P.J. Defendant, who killed her boyfriend, Antonio Pena, with a knife, appeals as of right from her conviction by a jury of voluntary manslaughter, MCL 750.321. The trial court sentenced her as a fourth-offense habitual offender, MCL 769.12, to five to twenty years' imprisonment. Defendant argues on appeal that she should have been allowed a jury instruction regarding the defense of others because the jurors could have concluded that she killed Pena while defending her unborn children.[1] We agree that a defense of others jury instruction was appropriate

---

[1] Defendant told a Kalamazoo police officer that she had been carrying quadruplets at the time of the stabbing.

here and therefore reverse defendant's conviction and remand this case for a new trial.

Defendant stabbed Pena on October 9, 1999. According to a Kalamazoo police officer, defendant told him that she and Pena had argued that day over Pena's cocaine use. Defendant told the officer that Pena subsequently punched her two times in the stomach and that she warned Pena not to hit her because she was carrying his babies. Defendant stated that when Pena came toward her again, she stabbed him in the chest. He died as a result of the stab wound.

Months before trial, defendant moved for permission to present testimony and to argue that she killed Pena in defense of her unborn children. The trial court concluded that a person could assert the defense of others theory if the person is claiming that deadly force had to be used to protect a fetus or embryo. The court signed an order stating that "Defendant's Motion to Allow Defense of Defendant's Unborn Child as a Theory of Defense is hereby granted."

At trial, defendant presented evidence of Pena's assaultive nature. Apparently, he had hit defendant on other occasions, causing her at one point to seek treatment at a hospital and stay in a domestic violence shelter. The parties also presented testimony regarding defendant's alleged pregnancy. A nurse employed with the Kalamazoo County Sheriff's Department testified that defendant had a negative pregnancy test on November 9, 1999. However, another nurse employed by the Kalamazoo County Jail testified that defendant had a positive pregnancy test on October 25, 1999, and defendant and her cellmate testified that a tissue-like discharge had

appeared on defendant's sanitary napkin during the first week of November.

At the conclusion of the trial, defendant requested a jury instruction on the defense of others. See CJI2d 7.21, which states, in part, that "[a] person has the right to use force or even take a life to defend someone else under certain circumstances." Despite its earlier ruling, the trial court disallowed a defense of others instruction, noting that (1) the fetus or fetuses would have been only sixteen or seventeen weeks in gestation at the time of the stabbing and (2) according to a physician's trial testimony, a fetus under twenty-two weeks old is nonviable, i.e., it is not capable of surviving outside the mother's womb. The trial court concluded that in order for defendant to assert a defense of others theory, there had "to be a living human being existing independent of [defendant] . . . ." It stated: "[E]ven under the evidence in this case, under 22 weeks, there are no others. And, that's my theory." The trial court did allow a self-defense jury instruction.

Defendant now argues that because the trial court did not instruct the jury on the defense of others theory, she was denied her constitutional right to present a defense. In order to determine whether the court should indeed have given the defense of others instruction, we must initially decide the purely legal question whether a nonviable fetus constitutes an "other" in the context of this defense.[2] With certain restrictions, we conclude that it does.

"In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant hon-

---

[2] We note that this Court reviews questions of law de novo. *People v Mackle*, 241 Mich App 583, 590; 617 NW2d 339 (2000).

estly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990). Deadly force may also be used "to repel an imminent forcible sexual penetration." *People v Barker*, 437 Mich 161, 163; 468 NW2d 492 (1991), habeus corpus relief gtd on other grounds sub nom *Barker v Yukins*, 199 F3d 867 (CA 6, 1999). Case law in Michigan also allows a person to use deadly force in defense of another. See *People v Curtis*, 52 Mich 616, 622-623; 18 NW 385 (1884), and *People v Wright*, 25 Mich App 499, 503; 181 NW2d 649 (1970). Traditionally, the "defense of others" concept applied solely to those persons with whom the defendant had a special relationship, such as a wife or brother. See *Pond v People*, 8 Mich 150, 174 (1860); see also *Curtis, supra* at 622-623, *Wright, supra* at 503, and *People v Burkard*, 374 Mich 430, 438; 132 NW2d 106 (1965), partial abrogation on other grounds recognized in *Heflin, supra* at 503, n 16. As recognized by CJI2d 7.21, however, the defense now makes no distinction between strangers and relatives with regard to its application. See LaFave & Scott, Criminal Law (2d ed, 1986), § 5.8, p 463.

We conclude that in this state, the defense should also extend to the protection of a fetus, viable or nonviable, from an assault against the mother, and we base this conclusion primarily on the fetal protection act adopted by the Legislature in 1998. See MCL 750.90a *et seq.*[3] This act punishes individuals who harm or kill fetuses or embryos under various circum-

---

[3] References to the act in this opinion are to the statutory language in effect at the time relevant to this matter. Subsequent amendments have not materially changed the provisions for purposes of our analysis.

stances. MCL 750.90a and 750.90b set forth penalties for harming a fetus or embryo during an intentional assault against a pregnant woman. MCL 750.90a punishes an individual for causing a miscarriage or stillbirth with malicious intent toward the fetus or embryo or for causing a miscarriage or stillbirth while acting "in wanton or willful disregard of the likelihood that the natural tendency of [his] conduct is to cause a miscarriage or stillbirth or great bodily harm to the embryo or fetus." MCL 750.90b punishes an individual for harming or killing a fetus or embryo during an intentional assault against a pregnant woman without regard to the individual's intent or recklessness concerning the fetus or embryo. MCL 750.90c punishes an individual for harming or killing a fetus or embryo during a grossly negligent act against a pregnant woman, again without regard to the individual's state of mind concerning the fetus or embryo.

The plain language of these provisions shows the Legislature's conclusion that fetuses are worthy of protection as living entities as a matter of public policy. See, generally, *People v Matelic*, 249 Mich App 1, 10; 641 NW2d 252 (2001) (the main indication of legislative intent is the plain language of the statute). Indeed, we note that a violation of MCL 750.90a is punishable by up to life imprisonment, nearly the harshest punishment available in our state.[4] Moreover, in enacting the fetal protection act, the Legislature did not distinguish between fetuses that are viable, or capable of surviving outside the womb, and those that are nonviable. In fact, the Legislature used the term "embryo" as well as the term "fetus" in

---

[4] The only harsher penalty being life imprisonment without the possibility of parole.

describing the prohibited conduct, and Black's Law Dictionary (7th ed, 1999), p 540, defines "embryo" as "[a] developing but unborn or unhatched animal; esp., an unborn human from conception until the development of organs (i.e., until about the eighth week of pregnancy)." This definition clearly encompasses nonviable fetuses. Moreover, the legislative analysis of the act indicates that, in passing the act, the Legislature was clearly determined to provide criminal penalties for harm caused to nonviable fetuses during assaults or negligent acts against pregnant women. See Senate Fiscal Agency Legislative Analysis, SB 21 and HB 4524, August 4, 1998.

Because the act reflects a public policy to protect even an embryo from unlawful assaultive or negligent conduct,[5] we conclude that the defense of others concept does extend to the protection of a nonviable fetus from an assault against the mother. We emphasize, however, that the defense is available *solely* in the context of an assault against the mother. Indeed, the Legislature has *not* extended the protection of the criminal laws to embryos existing outside a woman's body, i.e., frozen embryos stored for future use, and we therefore *do not* extend the applicability of the defense of others theory to situations involving these embryos.

We acknowledge that in *Ogas v Texas*, 655 SW2d 322, 325 (Tex App, 1983), the Texas Court of Appeals rejected the defendant's assertion that she was en-

---

[5] We note that the Legislature also passed civil protections for fetuses and embryos. See MCL 600.2922a, which currently provides, in part, that "[a] person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus."

titled to use deadly force to protect her unborn child. However, unlike Michigan, Texas has codified the defense of others theory in its criminal statutes. See Tex Penal Code Ann 9.33. Section 9.33 provides that one may use deadly force against another to protect a third "person," and "person" is defined by the penal code as "an individual, corporation, or association." See Tex Penal Code Ann 1.07(a)(38). Moreover, and significantly, "individual" is defined as a "human being who has been born and is alive." See Tex Penal Code Ann 1.07(a)(26). Under these circumstances, the court concluded that "an unborn fetus is not included within the statutory definition of 'person' and, hence, not included with the provision of Sec. 9.33." *Ogas, supra* at 325.

Michigan has not similarly codified the defense of others theory in its criminal statutes, and we are therefore not bound by restrictive statutory definitions. Our Legislature, as noted earlier, has expressed its intent that fetuses and embryos be provided strong protection under the law from assaults against pregnant women, and we believe that our decision today effectuates that intent.

The common law of other states is likewise distinguishable. In *Illinois v Gaines*, 9 Ill App 3d 589, 592-594; 292 NE2d 500 (1973), a pregnant woman unsuccessfully raised the defense of others theory in a case in which she was tried for killing her husband. The trial testimony established that, at the time of the killing, the defendant was five months pregnant and that the deceased was shot from the back. *Id.* The Illinois Court of Appeals dismissed the defendant's argument that she was acting to protect her unborn fetus, stating that the defendant cited no criminal law to support her contention and further stating that "clear

logic dispels such an issue, since in order to protect her unborn child the defendant would have to establish that she had the right to kill in her own defense. This she failed to do." *Id.* at 593.

In the instant case, we do find criminal law—specifically, the fetal protection act—to support defendant's right to assert the defense of others theory. Moreover, we fail to discern the "clear logic" referred to by the Illinois court. Indeed, we do not believe that a woman is limited to the use of deadly force against an attacker only if her own life is in danger. Instead, she may, under the appropriate circumstances, use deadly force to protect her fetus even if she does not fear for her own life.

A number of cases exist in which antiabortion activists on trial for criminal conduct have unsuccessfully raised the defense of others theory. For example, in *Louisiana v Aguillard,* 567 So 2d 674, 675 (La App, 1990), the defendants were prosecuted for criminal trespass, obstructing public passage, and resisting an officer after they protested abortions at an abortion clinic. The Louisiana Court of Appeals held that they were not entitled to assert a defense of others theory because a woman's right to obtain an abortion is constitutionally protected. *Id.* at 676-677. Likewise, in *Allison v City of Birmingham,* 580 So 2d 1377, 1383 (Ala Crim App, 1991), the Alabama Court of Criminal Appeals held that the defendant, who had been convicted of criminal trespass for protesting at an abortion clinic, could not raise a defense of others theory because " '[u]nlawful physical force' must be used by the other person in order to support a defense-of-third-persons" claim and because abortion is lawful.

The distinction between the abortion cases and the instant case is straightforward. The United States

Supreme Court has held that the Fourteenth Amendment of the United States Constitution guarantees the right to personal privacy and that this right encompasses a woman's decision whether to terminate her pregnancy. *Roe v Wade*, 410 US 113, 152-154; 93 S Ct 705; 35 L Ed 2d 147 (1973). The defense of others theory is available only if a person acts to prevent *unlawful* bodily harm against another. See LaFave & Scott, *supra* at § 5.8, p 463. Because clinics that perform abortions are engaging in lawful activity, the defense of others theory does not apply. Moreover, the Michigan Legislature specifically indicated that the criminal and civil penalties regarding injustices against fetuses and embryos do not apply to "[a]n act committed by the pregnant individual," to "[t]he lawful dispensation, administration, or prescription of medication," or to "[a] medical procedure performed by a physician or other licensed medical professional within the scope of his or her practice and with the pregnant individual's consent or the consent of an individual who may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency." MCL 750.90f(1)(a), (b), and (c). See MCL 600.2922a(2)(a), (b), and (c). Our holding today does not apply to what the United States Supreme Court has held to constitute lawful abortions.

In light of our holding regarding the applicable law, we must now determine whether the trial court's jury instructions represented an adequate application of the law to the facts of the instant case. A criminal defendant has a state and federal constitutional right to present a defense. Const 1963, art 1, § 13; US Const, Ams VI, XIV; *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984). Instructional errors that directly affect a defendant's theory of defense can

infringe a defendant's due process right to present a defense. See, generally, *Barker v Yukins*, *supra* at 875. Here, the trial court permitted defendant to present evidence that would establish a defense of others theory at trial. However, despite its pretrial ruling concerning the issue, the court declined to give the defense of others jury instruction, and defendant contends that this omission severely prejudiced her.

This Court reviews claims of instructional error de novo. *People v Hubbard (After Remand)*, 217 Mich App 459, 487; 552 NW2d 493 (1996). This Court also reviews de novo the constitutional question whether a defendant was denied her constitutional right to present a defense. See, generally, *People v Pitts*, 222 Mich App 260, 263; 564 NW2d 93 (1997). Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). Even if somewhat imperfect, instructions do not warrant reversal if they fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id.* The instructions must include all elements of the crime charged and must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence. *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). No error results from the absence of an instruction as long as the instructions as a whole cover the substance of the missing instruction. *People v Messenger*, 221 Mich App 171, 177-178; 561 NW2d 463 (1997).

We conclude that the failure to give a defense of others jury instruction deprived defendant of her due process right to present a defense. The prosecutor argues that the instructions as given were sufficient because they included a self-defense theory, which

the jury rejected, and because the court allowed defendant to present testimony concerning her pregnancy in order to justify her decision to defend herself. This argument is disingenuous. Indeed, in light of the punches to defendant's stomach, the jury could have rejected defendant's self-defense theory while at the same time finding that defendant killed Pena in defense of her unborn children. There was sufficient evidence presented from which the jury could have concluded that defendant was indeed pregnant at the time of the incident. As noted, jury instructions must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence. *Canales, supra* at 574. Because the jury instructions essentially excluded consideration of defendant's viable defense of others theory, a new trial is warranted.

We emphasize that our decision today is a narrow one. We are obviously aware of the raging debate occurring in this country regarding the point at which a fetus becomes a person entitled to *all* the protections of the state and federal constitutions. This issue, however, is not raised by the parties, is not pertinent to the resolution of the instant case, and does not drive our ruling today. Indeed, the issue today is straightforward: Is a nonviable fetus entitled to the protection of the laws of the state of Michigan to the extent that an individual, typically the mother, may defend the fetus during an assault against the mother? We conclude that an individual may indeed defend a fetus from such an assault and may even use deadly force if she honestly and reasonably believes the fetus to be in danger of imminent death or great bodily harm. Any other result would be anomalous, given the express policy of this state as declared by

the Legislature in the fetal protection act. Because the trial court did not instruct the jury regarding the defense of others theory as requested by defendant, we reverse defendant's conviction and remand this case for a new trial.

Reversed and remanded. We do not retain jurisdiction.