# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA STEPHEN SMITH,

        Defendant-Appellant.

UNPUBLISHED
October 13, 2015

No. 322283
Wayne Circuit Court
LC No. 13-007552-FH

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of driving while intoxicated causing serious impairment, MCL 257.625(5). The trial court sentenced defendant to three years' probation. We affirm.

On October 22, 2012, at approximately 2:30 p.m., several witnesses observed defendant driving his Jeep the wrong way on Warren in Westland. Defendant struck a gold Impala being driven by Edward Weiland. Weiland's Impala was forced into another vehicle. When Officer Kevin Yudt responded to the scene, he could smell a strong odor of alcohol emanating from defendant. Defendant admitted he had consumed a few drinks before he began driving. A partially full bottle of vodka was found in defendant's Jeep. A sample of defendant's blood was tested after the accident. Defendant's blood contained .201 grams of ethanol per 100 milliliters, which is approximately 2 1/2 times the legal limit.[1] Weiland suffered various injuries as a result of the accident. He underwent several surgeries to correct damage to his foot, and despite these surgeries, has difficulty walking.

Defendant was initially scheduled to be tried in a bench trial on July 18, 2013. However, because a witness could not be present and because of defendant's claims of discovery violations by the prosecutor, defense counsel successfully convinced the trial court to dismiss the case, but without prejudice. Defendant was rearrested and tried in a subsequent jury trial, where he was convicted. Defendant now appeals.

---

[1] Pursuant to MCL 257.625(1)(b), a person is intoxicated if "[t]he person has an alcohol content of .08 grams or more per 100 milliliters of blood . . . ."

-1-

Defendant first argues that the trial court erred by allowing a portion of Weiland's medical records to be read into evidence. Defendant argues that doing so violated his right to confrontation under the Sixth Amendment and violated the rules of evidence. We disagree. Because defendant did not timely raise in the trial court the specific arguments he now makes on appeal, these claims are unpreserved. See *People v Carines*, 460 Mich 750, 762-764; 597 NW2d 130 (1999) (claims of constitutional error must be timely raised in the trial court); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) (an evidentiary issue is preserved by objecting at trial, raising the same ground as asserted on appeal).[2]

Unpreserved claims of error are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. To be entitled to relief, defendant must show that an error occurred, that the error was plain, meaning it was clear or obvious, and that the error affected his substantial rights. *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Finally, even if defendant satisfies these three requirements, this Court "must exercise its discretion in deciding whether to reverse. Reversal is only warranted when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, brackets, and citation omitted).

After reviewing the record, we do not find that defendant has demonstrated that the trial court erred by admitting Weiland's medical records. But even if we were to agree with defendant on this point, we would not reverse because any potential error was not outcome-determinative. Because defendant was convicted of driving while intoxicated causing serious impairment, the prosecutor was required to show that defendant's operation of a motor vehicle "cause[d] a serious impairment of a body function of another person . . . ." MCL 257.625(5). Thus, the extent of Weiland's injuries was relevant. But the statements admitted from the medical records simply established that Weiland had a broken hand and foot. These facts were not disputed; Weiland had testified that his foot and hand were injured in the accident. Nor were they of much relevance. What was relevant was whether these injuries resulted in a serious impairment of a bodily function. Weiland provided extensive testimony regarding the extent of his foot injury, testimony that established that, as a result of the accident, his ability to walk was substantially impaired. Thus, even if the trial court erred by admitting the statements contained

---

[2] We note that defendant did raise these claims, but only in a motion filed in the trial court a month after the trial concluded. With regard to defendant's claim of evidentiary error, claims of evidentiary error must be preserved by raising them *at trial*. *Aldrich*, 246 Mich App at 113. With regard to defendant's constitutional claim, as our Supreme Court has explained, "that "[t]rial is by far the best time to address a defendant's constitutional *and* nonconstitutional rights." *Carines*, 460 Mich at 762. By only raising the claims a month after trial, defendant effectively deprived the trial court from correcting any potential errors at a time when doing so would have prevented the alleged errors from affecting his trial. Accordingly, we treat the errors as unpreserved. *Id*.

in the medical records, the error was not outcome-determinative, and accordingly, defendant would not be entitled to relief. *Carines*, 460 Mich at 763.

Defendant next argues that the trial court abused its discretion by refusing to dismiss the charges against him with prejudice due to various alleged discovery violations. We disagree. A trial court's decision regarding the appropriate discovery sanction is reviewed for an abuse of discretion. *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 454 n 10; 722 NW2d 254 (2006). See also MCR 6.201(J). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

Pursuant to MCR 6.201, various sanctions are available to the trial court when it determines a prosecutor has committed a discovery violation. These sanctions include ordering the prosecutor to provide discovery, granting a continuance, prohibiting introduction of the evidence, or entering another order justified under the circumstances. MCR 6.201(J). It is also within the court's discretion to dismiss charges against a defendant due to the prosecutor's discovery violations. *People v Davie*, 225 Mich App 592, 598; 571 NW2d 229 (1997). However, it is for the trial court to determine the appropriate sanction under the circumstances. *Greenfield*, 271 Mich App at 454 n 10. The trial court must balance the interests of the courts, the public, and the parties. *Id*. "Further, the complaining party must show that the violation caused him or her actual prejudice." *Id*., citing *Davie*, 225 Mich App at 598.

Defendant does not argue that any discovery violations caused him prejudice. The alleged violations at issue also were largely out of the prosecutor's control. The prosecutor requested evidence from police, but never received it; the prosecutor only received Weiland's photographs the morning of the bench trial. Moreover, it is clear that defendant, having never attempted to obtain the evidence he later claimed should have been provided, is at least equally at fault for any alleged violations. Further, the sanction advocated for by defendant would be the most severe sanction possible. Under the circumstances, the trial court's decision to dismiss the case without prejudice was not an abuse of discretion.

Defendant also argues that subjecting him to a trial after the first case was dismissed violated the double jeopardy clause of the Fifth Amendment. We disagree. "A double jeopardy challenge presents a question of constitutional law that this Court reviews de novo." *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004).

The double jeopardy clause protects a defendant against a second prosecution for the same offense after an acquittal. *Nutt*, 469 Mich at 574. "In a bench trial, jeopardy attaches once the court begins to hear evidence." *People v Hicks*, 447 Mich 819, 826-827; 528 NW2d 136 (1994). Although a bench trial was scheduled, the trial never began, and no evidence was taken.[3]

---

[3] Yudt was sworn as a witness and did provide some testimony. However, his testimony related to the issue of whether, as a preliminary matter, the prosecutor committed discovery violations. It was not testimony taken as part of a bench trial, and thus, does not implicate double jeopardy concerns. See *Hicks*, 447 Mich at 826-827.

Accordingly, jeopardy never attached, and the double jeopardy clause was not violated. Moreover, it is clear that defendant deliberately sought to terminate the proceedings on a basis unrelated to his factual guilt or innocence. "[T]he defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause . . . ." *US v Scott*, 437 US 82, 98-99; 98 S Ct 2187; 57 L Ed 2d 65 (1978). Defendant successfully avoided submitting the matter to the trier of fact "by persuading the trial court to dismiss it on a basis which did not depend on guilt or innocence." *Id*. at 99. Accordingly, there was no constitutional bar to defendant's second prosecution. *Id*.

Defendant next argues that the trial court erred by denying his motion to present a defense of involuntary intoxication and failing to instruct the jury on the defense. We disagree. Claims of instructional error are reviewed de novo. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). Claims that a defendant was denied the constitutional right to present a defense are also reviewed de novo. *Id*.

"A criminal defendant has a state and federal constitutional right to present a defense." *Id*. at 326. "Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *Id*. at 326-327. This is because jury instructions "must include all elements of the crime charged and must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence." *Id*. at 327. A new trial is required if the trial court's instructions effectively prevented a defendant from pursuing a viable defense. *Id*. at 328.

"Involuntary intoxication is intoxication that is not self-induced and by definition occurs when the defendant does not knowingly ingest an intoxicating substance, or ingests a substance not known to be an intoxicant." *People v Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992) (quotations omitted). In the trial court, defendant argued that his use of clonazepam, when combined with alcohol, could "create an autonomic effect, which results in sleepwalking or sleep driving." It is undisputed that defendant voluntarily ingested both his medication and alcohol. However, Michigan has recognized that the use of prescription medications can cause involuntary intoxication under certain circumstances. *Id*. at 188. A defendant pursuing such a defense must establish three elements: (1) that the defendant did "not know or have reason to know that the prescribed drug is likely to have the intoxicating effect[,]" (2) that "the prescribed drug, not another intoxicant, . . . caused the defendant's intoxicated condition[,]" and (3) "that as a result of the intoxicated condition, [the defendant] was rendered temporarily insane." *Id*.

The trial court ruled that because there was no evidence that defendant was forced to drink alcohol, he could not pursue the defense. In this regard, the trial court erred. The defense of involuntary intoxication is available if the three elements discussed above are met, none of which requires that the defendant be forced to ingest an intoxicating substance. *Id*.

-4-

However, the trial court reached the correct result.[4] Defendant was given two opportunities to make an offer of proof regarding his defense, first at the hearing on his motion, and then again by way of his own testimony at trial. At the motion hearing, defense counsel stated only, "it would have to depend on the testimony of [defendant]. It would put him in the position of having to testify, but it would be the symbolic effect of alcohol, prescription medication, and sleep deprivation as negating the intent to get behind the wheel of a vehicle after consuming alcohol." At trial, a separate record was made, where defendant testified. Defendant explained that he was a physician at a hospital. At no point in the record did defendant explain how he, despite his chosen profession, could not "know or have reason to know" of a potential serious interaction between his prescribed medication and alcohol. *Id.* Because the record does not support defendant's claim of involuntary intoxication, the trial court did not err by refusing to instruct the jury regarding the defense.

Defendant next argues that the trial court erred by allowing Yudt to opine, as an expert witness, that defendant was intoxicated while driving. We disagree. "This Court reviews for an abuse of discretion a trial court's qualification of an expert witness and its ultimate ruling regarding whether to admit expert testimony." *People v Wood*, 307 Mich App 485, 507; 862 NW2d 7 (2014).

Defendant asserts that the trial court's decision to allow Yudt to testify as an expert violated his constitutional rights to due process and a fair trial. However, defendant offers no explanation of how his constitutional rights were affected. Defendant may not simply announce his position and leave it to this Court to discover and rationalize the basis for his claim. *People v Cox*, 268 Mich App 440, 455 n 3; 709 NW2d 152 (2005). Regardless, "evidentiary errors are nonconstitutional." *People v Blackmon (On Remand)*, 280 Mich App 253, 260; 761 NW2d 172 (2008). Accordingly, the question to be answered is whether defendant is entitled to relief due to an evidentiary error.

Defendant raises several arguments regarding why Yudt should not have been allowed to offer expert opinion testimony. Even assuming defendant is correct, he would not be entitled to relief. If an error in the admission of evidence is found, "defendant has the burden of establishing that, more probably than not, a miscarriage of justice occurred because of the error." *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001). Reversal is not required unless defendant shows that, on the entire record, it appears that the error was outcome-determinative. *Id.* Here, there was no dispute that defendant was intoxicated as that term is defined under MCL 257.625. Under MCL 257.625(1)(b), a person is intoxicated if he has "an alcohol content of 0.08 grams or more per 100 milliliters of blood . . . ." Blood testing completed after the accident found that defendant's blood alcohol level was approximately 2 1/2 times this limit. Yudt's opinion that defendant was intoxicated added little, if anything, to the case. As such, admission of this opinion was harmless. *Knapp*, 244 Mich App at 378.

---

[4] This Court will not reverse the trial court when it reaches the correct result, albeit for an incorrect reason. *People v King*, 297 Mich App 465, 475; 824 NW2d 258 (2012).

Finally, defendant argues that he was denied a fair trial through juror misconduct. We disagree. A trial court's decision to deny a motion based on alleged juror misconduct is reviewed for an abuse of discretion. *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997). An abuse of discretion occurs "only where the misconduct was such that it affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment." *Id*. "A new trial will not be granted if no substantial harm was done thereby to the defendant, even though the misconduct may merit a rebuke from the trial court if brought to its notice." *Id*. See also *People v Fetterley*, 229 Mich App 511, 546; 583 NW2d 199 (1998) (to be entitled to a new trial, "[p]rejudice must be shown, or facts clearly establishing the inference that it occurred from what was said or done.").

Defendant's claim of error arises from two Facebook posts written by Kody Bourasaw, the jury foreperson. Nothing in either post demonstrates that defendant's right to a fair and impartial jury was prejudiced. Neither post shows that Bourasaw was exposed to an extraneous influence or that he was biased toward defendant. The first post is simply his expression of gratitude that the trial was reaching its conclusion, while the second expresses disappointment that the jury had yet to agree on a verdict. As there is no indication that the posts prejudiced defendant's right to a fair and impartial jury, reversal is not warranted. *Messenger*, 221 Mich App at 175.

Moreover, the Facebook posts cannot even be used to establish juror misconduct. "[Juror m]isconduct can be demonstrated with evidence pertaining to outside or extraneous influences, but cannot be demonstrated with evidence indicating matters that inhere in the verdict, such as juror thought processes and interjuror inducements." *Messenger*, 221 Mich App at 175. The comments do not demonstrate extraneous influences, but rather, demonstrate Bourasaw's internal thought processes during trial and deliberations. Accordingly, this evidence cannot be used to demonstrate juror misconduct. *Id*.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens