*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICARDO JUNIOR FLORES,

Defendant-Appellant.

FOR PUBLICATION
April 27, 2023
9:10 a.m.

No. 360584
Lenawee Circuit Court
LC No. 2020-019980-FH

Before: M. J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

SWARTZLE, J.

Courthouses are rarely (if ever) at the bleeding-edge of technology. When video is introduced into evidence, it is almost always played and viewed in the courtroom. If jurors ask to see the video again after they have started their deliberations, the only option available in many courthouses is for jurors to watch the video in that same courtroom. This is what happened here, but defendant argues on appeal that this resulted in reversible error because, somewhat contradictorily, (1) jurors were not able to deliberate among themselves during the playing of the video, but (2) the judge and others were present during the playing of the video and therefore intruded into the jurors' deliberations. Viewed from either angle, the claim is without merit; finding no other reversible error, we affirm.

## I. BACKGROUND

Adrian police were called to a disturbance in front of defendant's residence. Officers Alyssa Monnette and Steven Allen, among other officers, responded to the disturbance, and both were recording on their body cameras. The videos were introduced into evidence and showed that defendant was sitting on his porch when the officers arrived, and he became verbally and physically aggressive. He was swearing at the officers and making motions as if he were going to fight them. Officer Monnette gave defendant clear instructions, with which defendant did not initially comply, and when being led to the police cruiser, defendant got into a physical altercation with Officer Allen.

Defendant was charged with two counts of assaulting, resisting, and obstructing a police officer under MCL 750.81d(1), one count for his interaction with Officer Monnette and one for

his interaction with Officer Allen. At trial, the trial court gave preliminary instructions to jurors that related to defendant's charge involving Officer Monnette, but it did not mention the charge involving Officer Allen. When the trial court instructed the jury at the conclusion of trial, however, it did instruct jurors on both counts of assaulting, resisting, or obstructing an officer for Officer Monnette and Officer Allen. Additionally, the verdict form included both counts, and the form clearly distinguished the count relating to Officer Monnette from the count relating to Officer Allen.

After the jury began its deliberations, it asked to view the officers' body-camera videos again. The trial court held an off-the-record discussion with counsel in chambers, and then the trial court went back on the record and explained that the only way that the videos could be played for the jury would be in the courtroom, as the jury-deliberation room did not have the technical capability to play the videos. The trial court stated that defendant had agreed to allow the jury to watch the videos, and defendant did not place any objection on the record concerning the process by which the jury viewed the footage. (It is not clear, however, that defendant affirmatively agreed to bring the jury back into the open courtroom.) Finally, the trial court noted that the proceedings were not on YouTube, and the only person in the remote-meeting session on Zoom was a judicial assistant.

The jury then watched the two videos without interruption. There is nothing in the record (e.g., a transcript note) to suggest that the jurors said anything among themselves or to anyone in the courtroom; similarly, there is nothing in the record to suggest that anyone said anything to a juror, other than the trial court explaining to the jurors that the videos would be shown in the courtroom. Once the videos ended, the jurors went back to the deliberation room, where they deliberated for approximately ninety minutes more before announcing that they had reached a verdict. The jury convicted defendant on both counts.

Defendant subsequently moved for a mistrial. Among other things, defendant argued that the trial court interfered with the jury's deliberations during the rewatching of the videos. The trial court considered that claim waived, and otherwise denied the motion.

Defendant now appeals.

## II. ANALYSIS

On appeal, defendant makes two claims for reversal. First, defendant challenges the trial court's process for showing the videos to the jury after they had begun their deliberations. Second, defendant points out that the trial court failed to instruct the jury at the beginning of the trial with respect to one of the officers. We take up each claim in turn.

## A. WATCHING VIDEO DURING JURY DELIBERATIONS

Defendant begins by taking issue with how the trial court handled the jury's request to view the videos after the close of proofs. Defendant raised this claim for the first time in a motion for mistrial. We review for an abuse of discretion a trial court's decision on a motion for a mistrial. *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). An abuse of discretion occurs when the result is outside the range of principled outcomes. *People v March*, 499 Mich 389, 397; 886

NW2d 396 (2016). A mistrial should be granted only if "an irregularity that is prejudicial to the rights of defendant" occurs and "impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (cleaned up).

The trial court rejected this claim on the basis of waiver. Our Supreme Court "has defined 'waiver' as the intentional relinquishment or abandonment of a known right," which provides no right to appeal. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Waiver "differs from forfeiture, which has been explained as the failure to make a timely assertion of a right," which is reviewed for plain error. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (cleaned up).

We have reviewed the record, and it contains only part of the parties' discussion with the trial court concerning the jurors' request to view the body-camera videos, as most of the discussion occurred in chambers. It appears clear that defendant agreed that the jurors could watch the two videos again, but it is not clear whether defendant affirmatively agreed that they could do so in the courtroom, versus merely not objecting to that location. Out of an abundance of caution, we will treat defendant's claim as merely forfeited rather than affirmatively waived; accordingly, we review it through the lens of the *Carines* plain-error standard. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

With respect to the jurors' request, there is no absolute right for a party to have an exhibit in the jury-deliberation room. Our court rules set forth the standards and procedures concerning materials that a jury can review during its deliberations. Specifically, MCR 2.513(O) and (P) provide:

> (O) Materials in the Jury Room. The court shall permit the jurors, on retiring to deliberate, to take into the jury room their notes and final instructions. The court may permit the jurors to take into the jury room the reference document, if one has been prepared, as well as any exhibits and writings admitted into evidence.

> (P) Provide Testimony or Evidence. If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

Defendant argues, in essence, that there was external influence on the jurors during the viewing of the videos. Generally speaking, whenever there is communication or interaction with the jury once deliberations have started, there will be a risk of external influence on the jury, i.e., influence from a source outside the trial process (e.g., newspaper not in evidence; bribe offered to juror). This is distinct from internal influence, for example, a claim that a juror could not hear the

court's instructions. See *Tanner v United States*, 483 US 107, 117-118; 107 S Ct 2739; 97 L Ed 2d 90 (1987).

With respect to external influence on a jury, a new trial is necessary when a defendant has established that: (1) "the jury was exposed to extraneous influences"; and (2) "these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *People v Budzyn*, 456 Mich 77, 88-89; 566 NW2d 229 (1997). On this issue, our Supreme Court has held that the mere presence of a nonjury member in the jury room during deliberations, without any act of intentional interference, may be sufficiently prejudicial through a chilling effect to warrant a new trial. *People v Chambers*, 279 Mich 73, 80-81; 271 NW2d 556 (1937).

Defendant's main argument is that the presence of the judge, lawyers, and others in the courtroom, while the two videos were replayed, interfered with the jury's ability to deliberate among themselves while watching the videos. For support, defendant relies primarily on *Chambers*. In that case, an officer of the court repeatedly entered the jury room and reported on the progress of jury deliberations to other court personnel. *Id*. at 79. The officer entered the deliberation room at least five times to offer the jurors refreshments, and on one occasion the officer was accosted by a detective asking if the jury had reached a verdict. *Id*. at 80. Our Supreme Court held that it was "not what the officer may have said or done any more than his mere presence with the jury that is or may be prejudicial to defendants and tend to cause suspicion upon otherwise orderly administration of justice." *Id*. at 80-81.

*Chambers* is distinguishable from this case on several points. First, no one outside the jurors themselves entered the jury-deliberation room. The jurors were free from outside influences to deliberate among themselves in that room, both before and after the replaying of the videos. Second, no one in the courtroom communicated with the jurors, other than the trial court's brief explanation about the replaying of the videos. Third, there is nothing to suggest that the jurors were somehow barred from taking notes during the replaying of the videos, and, in fact, it seems reasonable that, by not talking among themselves during the replaying of the videos, each individual juror was likely in a better position to focus on and evaluate the evidence for him- or herself. They could then take their individual impressions and evaluations and return to the deliberation room to continue their discussions, which is what they appear to have done, given that they deliberated for approximately another ninety minutes before delivering their verdict. Nothing on this record suggests even a remote possibility of a chilling effect on the jurors' deliberations.

Defendant also argues that he was prejudiced because the judge, lawyers, court personnel, "and others" were in the courtroom "during jury deliberation[s]." There does appear, however, to be some tension between arguing that (1) defendant was prejudiced because jurors were not allowed to deliberate while rewatching the videos, *while at the same time* (2) he was prejudiced because outsiders were present while jurors deliberated. In any event, the record makes clear that, outside of the trial court's brief explanation about the showing of the videos, no one in the courtroom communicated with a juror, and no juror communicated with anyone in the courtroom. Had lawyers or courtroom personnel invaded the jury-deliberation room, a chilling effect might very well have existed, as in *Chambers*; but the mere presence of other people in the courtroom while the jury reviewed evidence and then retired back to the jury-deliberation room is not enough to create a prejudicial chill. There was no error here, let alone plain error affecting substantial

rights, and the trial court did not abuse its discretion in denying defendant's motion for mistrial on this ground.

## B. JURY INSTRUCTIONS

Next, defendant argues that the trial court erred by omitting the charge regarding Officer Allen in the preliminary-jury instructions. Generally, we review de novo claims of instructional error. *People v Dupree*, 284 Mich App 89, 97; 771 NW2d 470 (2009). When the trial court instructed the jury, however, defendant did not raise an objection. Accordingly, we review this unpreserved claim for plain error under *Carines*.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Hawthorne*, 474 Mich 174, 182; 713 NW2d 724 (2006) (cleaned up). Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Even if somewhat imperfect, instructions do not create error if they fairly presented the issues to be tried and sufficiently protected defendant's rights. *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). No error results from the omission of an instruction if the instructions as a whole covered the substance of the omitted instruction. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

In this case, even though the trial court omitted the charge involving Officer Allen during the preliminary-jury instructions, the trial court included this charge in the final-jury instructions. The jury was also provided with a verdict form that made it clear that the jury was to reach a decision on each charge. Thus, no error resulted from the omission of the charge in the preliminary-jury instructions because that error was timely corrected by the trial court in its subsequent instructions and verdict form. *Id*.

## III. CONCLUSION

The trial court did not err when, after the jury had already begun its deliberations, it permitted the jury to rewatch in the courtroom videos introduced into evidence. Nor were defendant's substantial rights affected by the trial court's incomplete preliminary instructions, given that the trial court properly instructed the jury at the conclusion of proofs.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney