*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICKY GENE ALLISON,

        Defendant-Appellant.

UNPUBLISHED
February 1, 2024

No. 366716
Wayne Circuit Court
LC No. 22-003174-01-FC

Before: K. F. KELLY, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

In this interlocutory appeal, defendant Ricky Gene Allison appeals by leave granted[1] the trial court's order denying his motion to introduce evidence. Allison is charged with first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c) (sexual penetration involving another felony) and (f) (sexual penetration accomplished by force or coercion and causing personal injury), assault by strangulation, or with intent to do great bodily harm, MCL 750.84, and domestic violence, MCL 750.81(2). We reverse and remand for further proceedings.

## I. BACKGROUND

This case started with Allison engaging in penetrative sex acts and grabbing the throat of the complainant, BT, a former girlfriend, while she was in Allison's home. After the incident, the prosecution charged Allison with two counts of CSC-I, one count of strangulation (or assault with intent to do great bodily harm), and one count of domestic violence. Presently, Allison does not

---

[1] See *People v Allison*, unpublished order of the Court of Appeals, entered July 19, 2023 (Docket No. 366716).

dispute he sexually penetrated BT or that he grabbed her throat. Rather, the defense theory turns on the question of consent.

At the preliminary examination, BT testified that she agreed to come to Allison's house to help clean his basement. Allison picked up BT from her house and drove her to his house. After they arrived, she began cleaning the basement, which was where Allison's bedroom was located, and Allison approached her from behind and started groping her. BT "asked him to stop because [she] [was not] wanting to do anything." According to BT, Allison then pushed her onto his bed so that she was facing him. After removing both of their pants, Allison inserted his penis into BT's vagina. He then began to choke BT, using one hand to restrain BT's hands and one hand to grip her throat. BT tried to remove Allison's hand from her throat to tell him to stop, but she could not move his hand away or speak. BT testified that she lost consciousness from a lack of oxygen, and when she awoke a few minutes later, Allison had already gone upstairs. BT then called her father to pick her up, and she left Allison's house.

Allison and BT had previously been in a dating relationship and had a child together, but they were not dating at the time of the alleged offenses. They had sex during their prior relationship, and on several occasions when BT would go over to Allison's house to help clean. BT testified she had previously consented to Allison grabbing her neck during sex on other occasions. But BT testified that she did not want to have sex with Allison and did not consent to sex on the day of the incident. She again confirmed that she had engaged in consensual erotic asphyxiation with Allison in the past, but he had never choked her as forcefully as he did the day of the alleged conduct.

Allison filed a motion in limine to introduce (1) evidence of similar instances of prior sexual relations between him and BT and (2) evidence that BT had been in a relationship with another person at the time of the incident. Allison argued that both categories of evidence were material to the issues of consent and to BT's credibility. Specifically, he argued that the evidence helped established BT's motive to lie about the sex acts being nonconsensual. The prosecution responded and argued that the rape-shield statute, MCL 750.520j(1), prohibits Allison from introducing evidence of whether BT was in another relationship at the time of the incident and evidence of nonrelevant instances of past sexual conduct between him and BT.

The trial court held a motion hearing and both parties argued consistent with their written submissions. Additionally, Allison explicitly noted that, regarding the evidence concerning BT's other relationship, he would only ask whether BT was in another relationship at the time of the incident and not "whether . . . it was sexual in nature . . . ." The court stated that, by itself, the evidence of Allison and BT's prior sexual acts was not relevant, but the court acknowledged that the issue would be "a little more complicated with this other potential relevancy question with this third[]party." Following the hearing, the court asked Allison for supplemental briefing addressing why evidence of BT's third-party relationship was relevant. After the defense filed a supplemental offer of proof, the trial court entered an order denying Allison's motion. This appeal followed.

II. STANDARD OF REVIEW

We "review[] for an abuse of discretion the trial court's decision to admit or exclude evidence." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "The trial court abuses

its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (footnotes omitted). We "review de novo the preliminary questions of law surrounding the admission of evidence . . . ." *Id*. (footnote omitted). Additionally, we review de novo questions of law concerning "the interpretation and application of a statute . . . ." *People v Zajaczkowski*, 493 Mich 6, 12; 825 NW2d 554 (2012).

## III. LAW AND ANALYSIS

Allison argues the trial court erred when it excluded evidence that (1) he and BT previously engaged in consensual acts similar to the conduct underlying the charges and (2) BT was in another relationship with a third party at the time of the incident. We agree.

"A criminal defendant has a state and federal constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002), citing US Const, Ams VI, XIV; Const 1963, art 1, § 13. Additionally, under MRE 402,[2] "[r]elevant evidence is admissible" unless otherwise provided by the state and federal constitutions, the rules of evidence, or other rules our Supreme Court prescribes. MRE 401 provides that evidence if relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." MRE 401(a) and (b). The court may, however, "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403. "[U]nfair prejudice occurs where either a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, or it would be inequitable to allow the proponent of the evidence to use it." *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002) (quotation marks and citation omitted).

### A. EVIDENCE OF PRIOR SEXUAL CONDUCT BETWEEN ALLISON AND THE COMPLAINANT IS ADMISSIBLE

The trial court erroneously excluded evidence of Allison's prior sexual relationship with BT under the rape-shield statute. It misinterpreted the statute and elected to apply distinguishable cases over cases that closely mirror the facts of this case. In doing so, it failed to engage in the balancing that the rape-shield statute and our state and federal constitutions require.

Generally, Michigan's rape-shield statute, MCL 750.520j(1), excludes evidence of a complainant's sexual conduct. In its relevant parts it provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material

---

[2] The Michigan Rules of Evidence were recently amended, effective January 1, 2024.

to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

In other words, the evidence is inadmissible unless it is material to a fact at issue and its probative value outweighs its inflammatory, prejudicial nature. See *id*. We observe that the prejudice analysis under MCL 750.520j is more restrictive, which is to say more likely to exclude evidence, than the prejudice analysis under MRE 403. Compare MCL 750.520j(1) (requiring a finding that the proposed evidence is material to a fact at issue and that its inflammatory or prejudicial nature does not outweigh its probative value) with MRE 403 ("The court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of . . . unfair prejudice . . . .") (emphasis added).

Regarding Michigan's rape-shield law, the United States Supreme Court has held that the constitutional right to confrontation is subject to a balancing test involving consideration of other legitimate state interests such as avoiding harassment, prejudice, confusion of the issues, safety, and repetitive or marginally relevant evidence. *Michigan v Lucas*, 500 US 145, 149; 111 S Ct 1743; 114 L Ed 2d 205 (1991). "[D]eterminations of relevance, materiality, prejudicial value, and the defendant's constitutional right to use the proffered evidence, depend on the facts of the case. Accordingly, the rape-shield statute should not be interpreted to foreclose consideration of such issues arbitrarily." *People v Adair*, 452 Mich 473, 484-485; 550 NW2d 505 (1996). Our Supreme Court has held that when the proposed evidence of sexual conduct relates to the complainant's consensual sexual relations with the defendant, the primary focus of the court's inquiry shifts from the strong public policy interest in excluding inflammatory or prejudicial evidence to materiality and balancing the probative value of the evidence against its prejudice. *Id*. at 307-308; *People v Perkins*, 424 Mich 302, 307; 379 NW2d 390 (1986).

In *People v Perkins*, on facts analogous to this case, our Supreme Court held that evidence of prior sexual conduct between the complainant and the defendant was admissible after balancing the probative value of the evidence against the danger of unfair prejudice. *Perkins*, 424 Mich at 307-308. There, the defendant was accused of assault with the intent to commit criminal sexual conduct involving penetration, MCL 750.520g. *Perkins*, 424 Mich at 303. The defendant filed a motion for a ruling on the admissibility of evidence, showing that approximately one week before the alleged offense the complainant and the defendant engaged in sexual conduct at the defendant's residence. *Id*. Our Supreme Court affirmed the trial court's decision to admit the evidence, concluding that the rape-shield statute's strong prohibitions on evidence of a complainant's past sexual activities were not involved, but rather evidentiary issues of materiality and balancing probative value against prejudice. *Id*. at 307-308. It noted that if the factfinder, likely a juror, "were to believe the defendant's description of the encounter the previous week, that evidence could influence its decision as to whether the events on [the date in question] amounted to an assault or were consensual." *Id*. at 308.

These principles apply here. The factfinder likely will be confronted with two stories of the incident, one from BT and one from Allison. If a jury believes Allison's description of their prior encounters, that evidence could influence the juror's decision on whether the alleged offenses were assaults or consensual sex acts.

Unlike *Perkins,* in *Adair*, consent was not at issue. See *Adair*, 452 Mich at 482, 488-489. There, the defendant allegedly sexually assaulted his wife (the victim) through digital-anal penetration. *Adair*, 452 Mich at 476. The defendant denied the allegation and based his defense on the theory that the alleged sex acts never occurred. *Id*. At the pretrial hearing, the victim testified that "digital-anal sexual activity was a common practice in the couple's marriage." *Id*. at 476-477. The defendant then moved to introduce evidence of specific instances of the "marital common practice of digital-anal sexual activity," which the trial court denied. *Id*. at 477. On appeal, the *Adair* Court concluded that "[e]vidence of a prior sexual encounter between the complainant and the defendant could be probative of the defendant's version that the events on the night in question were consensual." *Id*. at 482. However, because the defense was that the incident never occurred in the first place (and not a defense of consent), the Court ultimately affirmed the trial court's denial of defendant's motion to introduce the evidence. *Id*. at 488-489.

Different from *Adair*, here, Allison bases his defense on the theory that the incident was consensual.[3] Further, "[e]vidence of the victim's past sexual conduct with the actor" is a clear exception to the rape-shield statute. MCL 750.520j(1)(a). Thus, Allison is allowed to introduce evidence of prior instances of him and BT engaging in sexual conduct, including erotic asphyxiation so long as the evidence is material to a fact at issue and its prejudicial nature does not outweigh its probative value. See MCL 750.520j(1).

We conclude evidence of the couple's sexual conduct and engagement in erotic asphyxiation in the past is relevant to Allison's theory of defense that the incident was consensual. Without such evidence, testimony that Allison choked BT during the incident would likely lead the jury to believe the sex could only have been nonconsensual. The specificity of the proposed evidence amplifies its probative value. In other words, evidence not just of prior consensual sex, but evidence of Allison and BT engaging in specific types of rough sex acts is particularly probative to credibility and consent which both will be at issue at trial. Thus, the evidence of past

_____

[3] For the same reasons that this case is distinguishable from *Adair*, it is distinguishable from *People v Arenda*, 416 Mich 1; 330 NW2d 814 (1982), on which the trial court relied. There, the charges arose out of incidents involving an eight-year-old boy, with whom consent was impossible. See *id*. at 6. The prosecution moved in limine to exclude under the rape-shield statute evidence of sexual conduct between the victim and any person other than the defendant. *Id*. The defense argued that such evidence was relevant and admissible to explain the victim's ability "to describe vividly and accurately the sexual acts that allegedly occurred." *Id*. Our Supreme Court affirmed the trial court's exclusion in part based on a balancing of the risks of real danger of misleading the jury and the "obvious invasion of the victim's privacy." *Id*. at 12. This case is distinguishable for many reasons, primarily due to the probative value bearing directly on consent and the impact that the *Arenda* victim's age had on the balancing of probative value versus prejudice.

consensual sexual conduct involving this atypical sexual act is relevant to the issue of consent and to defend against any inferences the jurors might draw that the incident must have occurred as BT testified. Because this evidence "could be probative of [] defendant's version that the events on the night in question were consensual," we conclude the evidence is relevant to Allison's ability to present a consent defense. See *Adair*, 452 Mich at 482.

Finally, although evidence that BT had engaged in erotic asphyxiation with Allison in the past may be embarrassing or make BT uncomfortable, we conclude this evidence is not so inflammatory or prejudicial that this concern outweighs the probative value of the evidence or Allison's right to present a defense. Therefore, the trial court abused its discretion when it denied Allison's motion to introduce evidence that Allison and BT previously engaged in consensual acts of erotic asphyxiation. We conclude that the rape-shield statute does not exclude the proposed evidence.

## B. EVIDENCE OF THE COMPLAINANT'S RELATIONSHIP IS NOT SUBJECT TO THE RAPE SHIELD ACT

The trial court also erred in excluding evidence that BT was in a relationship with someone else at the time of the alleged offense. Because the proposed evidence does not involve the complainant's sexual conduct, whether specific incidents, opinion evidence, or reputation evidence, the rape-shield statute is not implicated at all.

Again, MCL 750.520j(1) states, "Evidence of specific instances of the victim's *sexual conduct*, opinion evidence of the victim's *sexual conduct*, and reputation evidence of the victim's *sexual conduct* shall not be admitted . . . ."[4] (Emphasis added.) Here, Allison unequivocally states he does not intend to introduce any evidence of BT's sexual conduct or activities in that relationship. He only seeks to introduce the fact that BT was in another dating relationship at the time of the incident. Allison's counsel explicitly stated during the motion hearing that he wished to present this evidence to prove BT had a motive to lie about the incident (i.e., to avoid trouble or embarrassment in her other relationship). We therefore conclude that MCL 750.520j does not apply to that proffered evidence. On its terms, the statute prohibits only evidence of instances of *sexual conduct*, not evidence of simply the existence of any other relationship at all. Allison explained he does not intend to question BT about whether her relationship with the third party was sexual in nature or ask about any instances of sexual conduct or activity between her and the third party.

Further, we conclude the evidence would be relevant to Allison's defense. In *Olden v Kentucky*, 488 US 227, 230, 232; 109 S Ct 480; 102 L Ed 2d 513 (1988), the Kentucky trial court barred the defendant from introducing evidence that the victim of a rape had a motive to lie in

---

[4] Further, MCL 750.520j(1)(b) also refers to "sexual activity." Subsection (1)(b) allows "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease" if the evidence's probative value outweighs its prejudicial nature. Although this provision is not at issue, it also illustrates that the rape-shield statute does not apply to evidence of a dating relationship without reference to sex.

order to protect another relationship. The Kentucky Court of Appeals affirmed the conviction and evidentiary ruling, concluding that although the evidence was not covered by the state's rape-shield law, the victim would be prejudiced by introducing evidence that she had been in another relationship at the time of the assault. *Id*. at 230. The Supreme Court reversed, holding that "a reasonable jury might have received a significantly different impression of the witness' credibility had defense counsel been permitted to pursue his proposed line of cross-examination." *Id*. at 232 (brackets omitted). Thus, the Kentucky Court of Appeals had failed to "acknowledg[e] the significance of . . . [the accused's] constitutional right to confrontation." *Id*.

Here, we conclude that if BT was in a dating relationship with someone other than Allison at the time of alleged offense conduct, that evidence has a tendency to make a material fact more or less likely: namely, it bears on BT's credibility. For example, it may lead a juror to infer that BT falsely stated that the sex acts were nonconsensual in order to protect her other relationship. Allison therefore could reasonably argue that BT had a motive to lie about the incident to keep her other partner from becoming upset or angry with her. It may just as easily lead a juror to infer that BT is telling the truth because she has even more motivation to report a violent sexual assault. Regardless of the inference the jurors ultimately make, the evidence was not barred under MCL 750.520j(1), and because it would be a fact "of consequence in determining the action" with a "tendency to make [that] fact more or less probable than it would be without the evidence," MRE 401, so evidence of BT's other relationship at the time of the incident is admissible under MRE 402. Allison is entitled to make this limited inquiry. Therefore, the trial court abused its discretion when it denied Allison's motion to introduce evidence of BT's other relationship at the time of the incident.

## IV. CONCLUSION

We reverse and remand for further proceedings consistent with this opinion. In doing so, we recognize the unique position of the trial judge as gatekeeper. We also recognize the potential unwieldiness of the proposed evidence at issue in this appeal. The trial court and parties should not construe this opinion as limiting the trial court's discretion to control the introduction of this evidence and questioning pursuant to MRE 403, so as to limit a "trial within a trial" on collateral matters. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Noah P. Hood