*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

SJIWANA LATRECE TAYLOR,

   Defendant-Appellant.

UNPUBLISHED
February 21, 2023

No. 359957
Jackson Circuit Court
LC No. 18-002411-FC

---

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant, Sjiwana Latrece Taylor, appeals as of right her conviction by jury verdict on a charge of second-degree murder, MCL 750.317. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 30 to 75 years' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

At approximately 3:30 a.m. on August 30, 2018, in the city of Jackson, Savanna Frinkle, Olivia Caston, and defendant walked to a party store. Douglas Goodwin, who was in the area, saw Frinkle engaged in a physical confrontation with 63-year-old Marvin Bearden (the victim) near the party store. Goodwin saw Frinkle repeatedly strike the victim while Caston and defendant were standing nearby, so Goodwin called 911. Frinkle, Caston, and defendant fled the scene, but not before Frinkle stabbed the victim several times and left a pocket knife with a three-inch blade and a black handle protruding from the side of the victim's face. The victim suffered ten stab wounds to his lower back, buttocks, neck, and head, which led to his death. DNA evidence collected from the handle of the knife was determined to have come from Frinkle, but defendant's DNA was not found on the knife.

Frinkle was charged with open murder and defendant was charged with aiding and abetting the murder. Defendant and Frinkle were tried together before separate juries. In exchange for her testimony, Caston was granted immunity from charges that could result from a marijuana sale that she conducted earlier on the night of the altercation. Caston testified in person at the preliminary examination, but she was not available to testify at the jury trial. On January 17, 2020, before the trial began, defense counsel stipulated that Caston was unavailable to testify at the trial despite the

-1-

prosecution's due diligence and that Caston's testimony from the preliminary examination should be admitted at the trial. The trial court ruled that Caston was an unavailable witness and allowed her preliminary examination testimony to be read into the record.

The jury learned through Caston's preliminary examination testimony that she was present on the night of the murder. The jury further heard that Caston arrived to sell marijuana at a house where defendant and Frinkle were present. During the marijuana transaction, Caston placed her pocket knife on the counter. After the marijuana transaction, Caston noticed that the pocket knife was missing. Caston testified that defendant had the pocket knife and refused to give it back, so Caston followed defendant and Frinkle out of the house to get her pocket knife back. They walked past a party store and saw the victim. Frinkle got into an altercation with the victim while Caston and defendant were across the street. Frinkle pushed the victim, so the victim threw a punch back at her. Defendant and Caston then crossed the street and defendant joined the fray. When Caston tried to intervene, the victim swung at her and missed. Then Caston hit the victim, knocking him to the ground.

According to Caston, the victim got up and started to run away, but Frinkle and defendant pursued him. The victim fell and defendant and Frinkle both continued to hit him. Caston stepped back into the fray to get Frinkle and defendant off the victim. The victim grabbed onto Frinkle's ankle, and at that point Caston saw that defendant had the pocket knife in her hand. Caston also noticed a man in a truck on the phone watching the fight. The man told defendant and Frinkle to leave the victim alone, but Frinkle continued to hit the victim. After police sirens started blaring, Frinkle got off the victim and the three women walked away from the scene. Caston asked Frinkle and defendant where her pocket knife was, and Frinkle responded that she had "left that bitch in [the victim's] face." Caston testified that she did not realize the victim had been stabbed during the altercation. She further testified that she never saw defendant hand the knife to Frinkle during the altercation. During an interview with the police approximately two weeks after the altercation, Caston stated that it was Frinkle, not defendant, who had taken Caston's pocket knife and punched the victim while the knife was in her hand. Other than Caston's testimony, no evidence admitted at trial connected defendant to the knife.

Goodwin, who saw the altercation from this truck, testified that he was going to work early in the morning and drove up to the fight. He saw two women standing approximately 25 feet away from Frinkle. He saw Frinkle punch and kick the victim so hard that he fell to the ground. When the victim tried to stand up, Frinkle placed him in a headlock and hit him in the back of his neck. Frinkle plunged a knife two to three times into the back of the victim's neck. Goodwin called the police and told the group of women to lay off the victim. Frinkle got off the victim, but the victim held onto the legs of her shorts. Frinkle stabbed the victim in the cheekbone area and left the knife in his face. Goodwin saw Frinkle join the other women and walk away from the scene. Goodwin testified that he arrived while the fight was in progress and that he only saw Frinkle fighting with the victim. He did not know how long the fight had been going on before he arrived. He testified that he only saw the knife in Frinkle's hand and never saw defendant interact with the victim.

On February 14, 2020, the jury found defendant guilty of second-degree murder. The trial court sentenced defendant on May 13, 2020, to serve 30 to 75 years' imprisonment on that charge. Defendant thereafter appealed, challenging her conviction, but not her sentence.

-2-

## II. LEGAL ANALYSIS

Defendant has identified three trial issues as potentially reversible error. First, she contends that the trial court should not have admitted at trial the testimony of Olivia Caston provided at the preliminary examination. Second, she argues that her trial counsel rendered ineffective assistance by failing to request a jury instruction on the right to defense of others. Third, she asserts that the evidence presented at trial was insufficient to support a conviction for second-degree murder. We shall address these three issues in turn.

## A. UNAVAILABLE WITNESS

Defendant insists that the prosecution failed to establish due diligence in locating Caston before the trial court declared her unavailable and permitted her testimony from the preliminary examination to be read into the record at trial. This Court reviews a trial court's determination that a witness is unavailable to testify at trial for an abuse of discretion. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). "A trial court abuses its discretion when it selects an outcome that was not in the range of reasonable and principled outcomes." *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011).

The Confrontation Clause in the Sixth Amendment to the United States Constitution states that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. The Michigan Constitution of 1963 also includes a right of confrontation. Const 1963, art 1, § 20; see also *People v Fackelman*, 489 Mich 515, 525; 802 NW2d 552 (2011). The confrontation clauses in the United States and Michigan constitutions preclude "the admission of testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v Dendel (On Second Remand)*, 289 Mich App 445, 453; 797 NW2d 645 (2010). Because defendant was permitted to cross-examine Caston at the preliminary examination, the admissibility at trial of Caston's preliminary examination testimony turns upon whether Caston was unavailable to testify at defendant's trial.

Under MRE 804(a)(5), a witness is "unavailable" when that individual "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." "The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial." *Bean*, 457 Mich at 684. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*.

We have held that a defendant conceded the prosecution's due diligence by stipulating to a res gestae witness's unavailability at trial. *People v Simon*, 174 Mich App 649, 657; 436 NW2d 695 (1989). Because the defendant stipulated to the res gestae witness's unavailability at trial, this Court "decline[d] to allow defendant an appellate parachute fashioned from the fiber of his own agreement." *Id*. Further, under well-established principles, "a stipulation constitutes a waiver of any alleged error[.]" *People v Eisen*, 296 Mich App 326, 328; 820 NW2d 229 (2012).

Here, defense counsel not only stipulated that Caston was "unavailable," but also stipulated that the prosecution had "been unable to procure the declarant's attendance by process or other reasonable means, and . . . due diligence is shown." By stipulating to Caston's unavailability and to the prosecution's due diligence in attempting to procure Caston's attendance, defendant waived any alleged error concerning Caston's testimony. *Simon*, 174 Mich App at 657; see also *Eisen* 296 Mich App at 328. Therefore, Caston's preliminary examination testimony was properly admitted at defendant's trial pursuant to the written stipulation signed on January 17, 2020.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next asserts that her trial attorney was ineffective in stipulating that Caston was unavailable and in failing to request a jury instruction on defense of others. We disagree with both arguments. A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's findings of fact for clear error, while we review questions of law de novo. *People v Trakhtenberg*, 493 Mich 38, 48; 826 NW2d 136 (2012). "When a defendant did not move in the trial court for a new trial or an evidentiary hearing" on the issue of ineffective assistance of counsel, though, "this Court's review is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). If the record does not contain adequate detail to support a defendant's ineffective-assistance claim, the defendant has effectively waived the issue. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

The United States and Michigan constitutions guarantee the defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. In order to obtain a new trial, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The defendant has to "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. But we "cannot insulate the review of counsel's performance by calling it trial strategy." *Id*.

First, defendant argues that her trial counsel was ineffective for stipulating that Caston was unavailable at trial. Defense counsel was not ineffective for agreeing to that stipulation. The most likely explanation for defense counsel's willingness to sign the stipulation is defense strategy. See *Trakhtenberg*, 493 Mich at 52. Caston's presence would have been beneficial to the prosecution and harmful to defendant's theory of the case. Caston was the only witness who testified defendant had the pocket knife and struck the victim. Defense counsel was able to impeach Caston based on her inconsistent statements about whether Frinkle or defendant took her pocket knife. In addition, defense counsel was able to question the reliability of Caston's testimony without Caston present to elaborate upon her testimony or explain inconsistencies in her stories. Under the circumstances, this Court will not second-guess defense counsel's trial strategy that led to the stipulation.[1]

---

[1] At a pretrial conference held on January 17, 2020, when the prosecution explained the stipulation about Caston's testimony to the trial court, the prosecutor made clear that the prosecution was still trying to locate Caston because the prosecution "would obviously prefer her to testify in person if

Second, defendant argues that her counsel was ineffective because he did not request a jury instruction explaining that defendant had a right to defend others. A defense attorney's failure "to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). Furthermore, a trial strategy does not constitute ineffective assistance just because it ultimately failed. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). A criminal defendant has "the right to have a properly instructed jury consider the evidence against [her]." *People v Mills*, 450 Mich 61, 80-81; 537 NW2d 909 (1995), modified 450 Mich 1212; 539 NW2d 504 (1995). An instructional error that directly affects a defendant's theory of defense can infringe a defendant's due-process right to present a defense. *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002). Instructions must include all elements of the offense charged and must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence. *Id.* at 327. A person may use self-defense without having the duty to retreat when "[t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a).

During the jury instruction conference on February 14, 2020, the trial judge discussed jury instructions on self-defense and defense of others. The trial court suggested including instructions on those subjects, and defense counsel for Frinkle chose to have her jury instructed on self-defense. In contrast, counsel for defendant explained that "there is no evidence that my client did anything so it's very difficult for me to argue for self-defense," so "I'm just going to leave it[.]" Similarly, when the trial court offered to give an instruction on defense of others, counsel for defendant noted that, "without self-defense" an instruction for defense of others was unnecessary. Given the theory of the case that defendant did nothing to the victim, defense counsel's strategic decision to decline an instruction on defense of others made good sense. A jury instruction suggesting that defendant was defending Frinkle by getting involved in the fight would have undermined defense counsel's entire theory of the case. Accordingly, this Court has no basis to second-guess the strategic choice to decline the trial court's offer of a jury instruction on defense of others. See *Dunigan*, 299 Mich App at 584.

## C. INSUFFICIENT EVIDENCE

Finally, defendant argues that the prosecution did not present sufficient evidence to support the conviction for second-degree murder on an aiding-and-abetting theory. This Court reviews de novo "whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992) (quotation marks omitted). " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of the crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). This Court "must view the evidence in a light most favorable to the prosecution[,]" *Wolfe,* 440 Mich at 515, and "we must defer to the fact-finder by drawing all

she is made available to us[.]" Thus, the record reflects the understanding that Caston's testimony at trial would be better for the prosecution than the admission of her testimony from the preliminary examination.

reasonable inferences and resolving credibility conflicts in support of the jury verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 535 (2007).

To obtain a conviction on the charge of second-degree murder, the prosecution must prove four elements: "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "[T]o convict a defendant of aiding and abetting a crime, a prosecutor must establish that '(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.' " *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004). As a result, "the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense." *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006).

Defendant contends that there was not sufficient evidence that she performed acts or gave encouragement that assisted Frinkle. She asserts that there was no evidence other than Caston's testimony that enabled the jury to find that defendant did anything more than stand off to the side and watch the fight. In addition, she argues that no witness testified that defendant gave the pocket knife to Frinkle. Thus, defendant's argument requires this Court to disregard Caston's testimony. The determination of Caston's credibility was a matter for the jury. *Schumacher*, 276 Mich App at 167. Defendant presented to the jury the same arguments about the sufficiency of the evidence that she now presses on appeal, but the jury found Caston credible enough to accept her testimony despite hearing that Caston was selling marijuana on the night of the murder, that she was high at the time of the altercation, and that she offered her testimony in exchange for immunity. The jury also heard that Caston changed her story about whether Frinkle or defendant took her pocket knife. Knowing all of that, the jury still accepted Caston's testimony about the role that defendant played in the altercation. Accordingly, the evidence, viewed in a light most favorable to the prosecution, established that defendant aided Frinkle in the attack. Caston testified that she saw defendant hit the victim while holding the pocket knife in her hand. Goodwin testified that he saw Frinkle stab the victim with the pocket knife. Thus, the record contains sufficient evidence to link defendant as an aider and abettor to the murder of the victim that was committed with the pocket knife.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ Christopher P. Yates

-6-